UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-217-KSF

T.S., *et al*.  PLAINTIFFS

v.  **OPINION & ORDER**

MITCHELL GABBARD, *et al*.  DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the parties' cross motions for summary judgment [DE ##27, 34, 67, and 72]. These motions are now ripe for review.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs, T.S. and T.S., as Next Friends to J.S. and K.S., ("Plaintiffs"), brought this federal civil rights and state tort claims action against two individual guards at the Breathitt Regional Juvenile Detention Center ("BRJDC"), Mitchell Gabbard and Rebecca Harvey, and against Jay Ronald Haws, Commissioner, Kentucky Department of Juvenile Justice ("DJJ"), and Hasan Davis, Deputy Commissioner of Operations, DJJ. [DE #3]. The four defendants were named individually and in their official capacity.

Plaintiffs' original complaint alleged that on June 2, 2009, they attended a middle school graduation party at a private home, where certain juveniles consumed alcoholic beverages. City of Hazard law enforcement officers gave breathalyzer tests at the home, after which Plaintiffs were arrested and taken to a local hospital for blood alcohol tests [DE #1-1]. They were subsequently charged with underage drinking. A Perry County District Judge ordered that Plaintiffs be detained

at BRJDC. BRJDC is a secure juvenile detention facility that houses both adjudicated juvenile offenders, as well as juveniles detained on alleged public or status offenses that have not been adjudicated through the Kentucky juvenile court system.

Upon arrival at BRJDC, Plaintiffs underwent the intake-processing as required by DJJ and BRJDC policies. The intake procedure as described by the policies entails an orientation of the juvenile detainee into the facility, completion of a personal history questionnaire, a pat-down frisk, and being photographed/fingerprinted. Additionally, the BRJDC intake procedure calls for a "Body ID/Showering Process," which is the crux of the Plaintiffs' claims in this action. *See* BRJDC Policy JD 23.2 [DE #27-4].

The Body ID process requires the juvenile being admitted into the facility to remove all clothing in the presence of a BRJDC employee. The process is conducted in a private observation room with an adjoining shower. The BRJDC employee visually observes the juvenile's nude body for signs of abuse, illness/infection, physical injury, deformities, scars, tattoos, or other such markings, and these observations are documented in a "Body ID Form." Any physical problems or abnormalities are referred to the medical staff for review. Following the Body ID process, the juvenile is treated with lice shampoo and required to shower [DE #27-4].

The Body ID process for J.S., a fifteen year old male, was conducted by Defendant Gabbard. and the process involving K.S., a fourteen year old female, was conducted by Defendant Harvey. The Body ID Forms set out the results of the Defendants' visual inspections. [DE #34-2 and 34-3].

The Plaintiffs alleged that the Body ID process violates their civil and Constitutional rights by subjecting them to arbitrary action, unreasonable search, deprivation of liberty, and deliberate indifference to their civil rights. They also alleged that the Defendants are liable to them under state

2

law for damages caused by false imprisonment, invasion of privacy, assault, negligence, and recklessness - including damages for emotional distress caused thereby.  Finally, the Plaintiffs alleged, upon information and belief, that "Defendants Haws and Davis have repeatedly failed to adequately train their employees and/or properly investigate and discipline their employees...." [DE #1-2*, *at ¶ 22].  Based on the foregoing allegations, the Plaintiffs' Complaint asserted violations of United States Constitutional Amendments IV and XIV as well as claims based on negligence, invasion of privacy, assault, false imprisonment and arbitrary action under Sections 2 and 3 of the Kentucky Constitution, grossly negligent infliction of emotional distress, intentional infliction of emotional distress, and deliberate indifference to their constitutional rights.

By Opinion and Order of August 27, 2010, Defendants Haws and Davis were dismissed as defendants to this action [DE #12].  Then, by Opinion and Order of October 6, 2010, the Court granted the Defendants' motion to dismiss the official capacity claims, the claims for money damages for violations of the Kentucky Constitution, and the claim of intentional infliction of emotional distress [DE #18].  Thus, the Plaintiffs' remaining claims include federal Constitutional claims pursuant to 42 U.S.C. § 1983 and state common, statutory and constitutional law violations pursuant to this Court's supplemental jurisdiction.

Both the Plaintiffs and the Defendants have filed motions for summary judgment.  The Plaintiffs contend that there is no genuine issue of material fact as to the constitutional nature of the body searches performed on the Plaintiffs by the Defendants [DE #34].  On the other hand, the Defendants contend that they are entitled to qualified immunity on the Plaintiffs' claims because their actions, in executing the BRJDC Body ID process, did not violate clearly established statutory

or constitutional rights of which a reasonable officer would be aware. Secondly, the Defendants claim that there is no genuine issue of fact with respect to the Plaintiffs' state law tort claims.

Upon review of the parties' motions, the Court entered its Order of December 8, 2011 informing the parties that based on preliminary research, the Court believes the policy at issue is unconstitutional and the individual defendants are not entitled to qualified immunity. The Court allowed Plaintiffs' additional time to file an Amended Complaint to name additional defendants [DE #46]. On December 19, 2011, Plaintiffs filed their Second Amended Complaint. In addition to the claims and defendants contained in their original complaint, the Second Amended Complaint asserts claims against J. Ronald Haws, Commissioner of Kentucky DJJ, A. Hassan Davis, Deputy Commissioner of Operations of Kentucky DJJ, Gary Sewell, Regional Facility Director of BRJDC, Gary Drake, Superintendent for BRJDC, and Jeff Voyles, Assistant Superintendent of BRJDC. Plaintiffs' claims against Voyles, Drake, Sewell, Davis and Haws are premised on supervisor liability, and include official capacity claims for declaratory relief. Additional limited discovery was allowed, and the parties have supplemented their motions for summary judgment [DE ##67, 72].

## II. SUMMARY JUDGMENT STANDARD

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further instructs that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." In deciding a motion for summary judgment, the court

must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. ANALYSIS

#### A. CONSTITUTIONAL CLAIMS

The Court turns first to the Plaintiffs' constitutional claims pursuant to 42 U.S.C. § 1983. The Plaintiffs assert claims against the Defendants for violation of their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. "Under § 1983, an individual may bring a private

right of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes." *Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011). The Defendants contend that they are entitled to summary judgment on the Plaintiffs' § 1983 claims on the basis of qualified immunity.

A government official performing discretionary functions is entitled to qualified immunity in his individual capacity, and is, therefore, shielded from liability for civil damages, if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 236 (6th Cir. 1992). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009). Such immunity is "'an expression of policy designed to aid in the effective functioning of government.'" *Scheuer v. Rhodes*, 416 U.S. 232, 242 (1974)(quoting *Barr v. Matteo*, 360 U.S. 564, 572-73 (1959)). The protection provided by qualified immunity covers mere mistakes in judgment and applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 129 S.Ct. at 815 (*quoting Groh v. Ramirez*, 540 U.S. 551, 567 (2004)(Kennedy, J., dissenting)).

In order to successfully assert the qualified immunity defense, an official must first demonstrate that he or she acted within their discretionary authority. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once this showing is made, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in his or her

position would have understood it was unlawful to engage in the conduct that violated the right. *Id.* Here, the Plaintiffs argue that Defendants Harvey and Gabbard were performing ministerial functions, as opposed to discretionary acts, when conducting the Body ID process. The Court agrees. The Body ID/Showering policy of DJJ clearly sets out a step-by-step procedure for guards to perform. They were simply carrying out a job assignment. Accordingly, they are not eligible for qualified immunity.

The allegations against the remaining Defendants are based solely on their alleged involvement in promulgating the Body ID process. While the Defendants have stated that they did not draft the Body ID policy at issue, they were in policy-making positions and were not present or involved in the strip search at issue in this case. *See* Declarations of Defendants Davis, Sewell, Drake, and Voyles, DE #67-2 through 67-5, and Declaration of Haws, DE #73. Under Kentucky law, rule making is a discretionary function in the performance of which a public official is entitled to immunity. *Yanero v. Davis*, 65 S.W.3d 510, 531 (Ky. 2001). Thus, based on the allegations against them, Defendants Haws, Davis, Voyles, Drake and Sewell may be eligible for the qualified immunity defense.

In evaluating whether a defendant is entitled to qualified immunity, "the court makes two inquiries: (1) '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]' and (2) was the right 'clearly established' to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful." *Bletz*, 641 F.3d at 750 (*quoting Saucier v. Katz*, 533 U.S. 194,

7

201 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223)(alterations in *Bletz*).[1] The operative question "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201.[2] Importantly, the Supreme Court has recently held that "[e]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011).

Furthermore, in the absence of controlling authority, qualified immunity applies unless there is a "robust consensus of persuasive authority" which would lead a reasonable official to conclude their conduct violated clearly established law. *Id*. at 2084. According to the Supreme Court, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 2085. When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *Id*.

Applying these standards in this case, it is the Plaintiffs who bear the burden of establishing that the Defendants are not entitled to qualified immunity. To do so, they must establish that the use of unclothed visual examinations upon intake into a secure juvenile detention facility violated clearly

---

[1] In *Pearson*, the United States Supreme Court relaxed *Saucier*'s requirement that the court must address these questions in order. *Pearson*, 129 S.Ct. at 818 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be mandatory.").

[2] In a pre-*Saucier* en banc decision, the Sixth Circuit added a third prong to this inquiry and held that, if the constitutional right at issue was clearly established, the court should then "determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). While some panels of the Sixth Circuit have continued to apply this three step analysis of qualified immunity claims even after *Saucier*, others have acknowledged *Saucier* as binding and declined to do so. *See Dunnigan v. Noble*, 390 F.3d 486, 491 at n.6 (6th Cir. 2004)(discussing the split amongst the various Sixth Circuit panels and declining to apply the third step of the analysis required by *Williams*).

established law on June 3, 2009. The Plaintiffs contend that the Defendants' conduct violated their constitutional rights as established by both the Fourth and Fourteenth Amendments.

However, the Plaintiffs' deliberate indifference substantive due process claim premised on the Fourteenth Amendment fails to state an independent grounds for relief. The Supreme Court has held that "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"). *Graham v. Connor*, 490 U.S. 386, 395 (1989). As the Plaintiffs have not presented any authority to proceed pursuant to the Fourteenth Amendment, the Court will dismiss this claim and consider the Plaintiffs' claims exclusively under the Fourth Amendment.

The analysis of pretrial detainee unlawful search claims begins with the balancing test adopted by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979). In *Wolfish*, the Supreme Court assumed, without deciding, that both convicted prisoners and pretrial detainees retain some Fourth Amendment rights upon commitment to a correctional facility. However, the Supreme Court approved a policy of conducting strip searches of pretrial detainees following every contact visit by a detainee with a person from outside the institution. In reaching this decision, the Supreme Court held that "reasonableness" requires "a balancing of the need for the particular search against the invasion of personal rights that the search entails," and instructs courts to consider four factors in assessing reasonableness: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. at 559. According to the Supreme Court, these searches were reasonable based on the obvious risk that such a visit may be used to introduce contraband into a penal institution.

9

According to the Sixth Circuit, however, "*Bell v. Wolfish*, however, does not validate a blanket policy of strip searching pretrial detainees." *Masters v. Crouch*, 872 F.2d 1248 (6th Cir. 1989). In *Masters*, the Sixth Circuit held that a detention facility policy which allowed for the strip search of detainees arrested for minor traffic offenses violated clearly established law. In distinguishing the facts of the case before it from others approving strip searches, the Court stated as follows:

> [I]t is objectively reasonable to conduct a strip search of one charged with a crime of violence before that person comes into contact with other inmates. There is an obvious threat to institutional security. However, normally no such threat exists when the detainee is charged with a traffic violation or other nonviolent minor offense.

Then, relying on decisions from other circuits, the Sixth Circuit held that "a strip search of a person arrested for a traffic violation or other minor offense not normally associated with violence and concerning whom there is no individualized reasonable suspicion that the arrestee is carrying or concealing a weapon or other contraband, is unreasonable." *Id*. at 1255.

Thus, based on *Masters*, the Body ID policy would be unconstitutional in any adult detention center. In this case, the strip searches were performed on juveniles. Strip searches of children raise unique concerns, since youth "is a time and condition of life when a person may be most susceptible to influence and psychological damage." *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982).

The only Sixth Circuit case addressing the issue of strip searches in the juvenile detention context is *Reynolds v. City of Anchorage*, 379 F.3d 358 (6th Cir. 2004). In *Reynolds*, a visual nude search was conducted by a police officer of a juvenile offender who had been placed in the Bellewood Home, a private group home facility. The search was requested because of staff concerns that the juvenile was acting strangely and drug use was suspected. The police arrived to investigate

and searched the juvenile's room where possible drug paraphernalia was discovered. When questioned, the juvenile then insinuated that she might have drugs hidden in her undergarments. A female officer was called and performed a visual strip search. *Id*. at 360.

Applying *Wolfish's* balancing analysis, the Sixth Circuit held that the warrantless strip search did not violate the Fourth Amendment. In reaching this result, the Sixth Circuit considered cases involving adult jail detainees as well as cases involving searches of students by school authorities. The court found that "[t]he situation of the juvenile delinquent inmates of the Bellewood Home lay somewhere between that of prison inmates and students in school." *Id*. at 364. Noting that they were "not as closely confined or strictly controlled and supervised as prison inmates or detainees," their expectation of privacy was somewhat greater than those of prisoners. However, as compared to students, the juveniles in *Reynolds* had a lesser expectation of privacy. The Sixth Circuit noted that the Bellewood Home had the duty and responsibility to insure the health, safety, and well being of the juvenile and other inmates and had a strong interest in eliminating and preventing drug use on its premises. Moreover, the juvenile had admitted to previous drug use, had been acting strangely, and had insinuated that she had drugs on her person. The court concluded that "[a]lthough the strip search was a highly invasive procedure, it was no more invasive than necessary to accomplish its purpose of insuring that Reynolds and the other girls were not concealing drugs on their persons. It was conducted in way to minimize its intrusive effect." *Id*. at 365.

Conversely, other circuits have explicitly allowed strip searches upon admission to a secure juvenile detention facility under certain circumstances. For instance, in *Justice v. City of Peachtree City*, 961 F.2d 188, 193 (11th Cir. 1992), the Eleventh Circuit held that "law enforcement officers may conduct a strip search of a juvenile in custody, even for a minor offense, based upon reasonable

11

suspicion to believe that the juvenile is concealing weapons or contraband." Similarly, in *Smook v. Minnehaha County*, 457 F.3d 806, 811-12 (8th Cir. 2006), the Eighth Circuit held that a juvenile detention center policy of requiring *partial* removal of clothing searches of juvenile detainees regardless of the seriousness of the charged offense or the existence of suspicion was reasonable under the Fourth Amendment, and that the defendants were entitled to qualified immunity. Similarly, the Second Circuit in *N.G. v. State of Connecticut*, 382 F.3d 225 (2nd Cir. 2004), held a strip search performed upon a juvenile's initial admission into a detention center was reasonable under the Fourth Amendment. In these cases, the purpose of the strip searches was to discover contraband.

This case, however, is distinguishable from *Reynolds, Justice, Smook*, and *N.G.* Here, the defendants admit that the purpose of the search was "not to discover contraband." Rather, "the purpose of the procedure is to document any obvious signs of injury, illness, infection or abuse." [DE #41-2, ¶4]. Yet neither Defendant is medically qualified to identify infection or disease. The Plaintiffs were subjected to the strip search without regard to the need to articulate any reasonable suspicion that they may have any underlying medical condition or injury. As the Plaintiffs suggest, a partially clothed search could yield the same results. The fact that the Defendants have failed to present any evidence that less intrusive alternatives would undermine their legitimate interests demonstrates that the extensive scope of the strip searches is an exaggerated response to its legitimate institutional concerns. Simply put, the reasons for performing the intake strip search at BRJDC simply do not justify the serious invasion of personal privacy suffered by the juvenile Plaintiffs.

While it is true that DJJ policy does allow for strip searches at Kentucky DJJ facilities, that policy was not implicated in this case. DJJ Policy 714 provides that strip searches may be conducted at a Kentucky DJJ facility, including BRJDC, <u>only upon reasonable suspicion</u> and <u>with prior approval</u> of the Superintendent or Assistant Superintendent [DE # 34-2]. The BRJSC policy providing for the Body ID process circumvents the reasonable suspicion and prior approval requirements required by DJJ.

Applying *Wolfish's* balancing test, the Court concludes that the strip searches at issue here were unreasonable under the circumstances, particularly in light of the fact that juveniles were involved. Moreover, the purpose of the search - to identify illness or injury - could have easily been accomplished by less intrusive means. Accordingly, the strip searches of the Plaintiffs were in violation of their constitutional rights.

Although the Defendants participated in this constitutionally impermissible search, they are nevertheless protected from civil liability if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S .at 818. When determining whether a right is "clearly established," courts look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit, and finally to decisions of other circuits. *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991). In order for the law to be clearly established as of the date of the incident, the law must "'truly compel (not just suggest or allow or raise a question about), the conclusion . . that what defendant is doing violates federal law *in the circumstances*.'" *Saylor v. Bd. of Education*, 118 F.3d 507, 515-16 (6th Cir. 1997)(quoting *Lassiter v. Ala. A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994)). An action's unlawfulness can be apparent even in novel factual circumstances "'so long as the prior decisions

13

gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)(citation omitted).

The burden is on the Plaintiffs to establish that the use of unclothed visual examinations upon intake into a secure juvenile detention facility violated clearly established law on June 3, 2009. The Plaintiffs continue to argue that the Supreme Court's recent decision in *Florence v. Chosen Freeholders Of The County of Burlington*, 536 U.S. ___, 132 S.Ct. 1510 (2012), is implicated in this case. However, the *Florence* case did not involve a case of strip searching juveniles. Additionally, *Florence* is irrelevant to the Court's analysis of the Plaintiff's individual capacity claims for money damages, because the Court must consider the law at the time the Defendants conducted the strip search, which occurred before the Supreme Court's decision in *Florence*. Thus, any reliance on *Florence* is misplaced.

The Sixth Circuit's ruling in *Masters*, handed down in 1989, was clear: "a strip search of a person arrested for a traffic violation or other minor offense not normally associated with violence and concerning whom there is no individualized reasonable suspicion that the arrestee is carrying or concealing other contraband, is unreasonable." *Masters*, at 1255. While *Masters* was decided in the context of an adult pretrial detainee, other Supreme Court and Sixth Circuit case law is clear that juveniles are entitled to at least as much privacy as adult inmates. For example, *Reynolds* upheld the strip search of the juvenile based on the fact that officials developed a reasonable suspicion that the juvenile was concealing contraband. Accordingly, the law was clearly established since at least 2004 in the Sixth Circuit that unclothed visual observation of a juvenile accused of a non-violent offense violates the Fourth Amendment in the absence of individualized reasonable suspicion of possession of contraband. Accordingly, the Defendants Gabbard and Harvey are not entitled to

qualified immunity on the Plaintiffs' Fourth Amendment claims. Their motion for summary judgment on this claim will be denied.

### B. STATE LAW CLAIMS

In addition to their § 1983 claims for violation of the federal constitution, the Plaintiffs also assert state law claims for negligence, invasion of privacy, assault, false imprisonment, arbitrary action under Sections 2 and 3 of the Kentucky Constitution, and grossly negligent infliction of emotional distress against Defendants Gabbard and Harvey. This Court has already held that the Plaintiffs' claims for money damages under the Kentucky Constitution fail pursuant to *Clark v. Kentucky*, 229 F.Supp.2d 718 (E.D.Ky 2002). [DE #18]. Additionally, the Court has previously dismissed the Plaintiffs' claims based on intentional infliction of emotional distress on the grounds that it is a "gap filler" that must be dismissed when other claims for traditional torts are asserted [DE #18]. The same reasoning applies to the Plaintiffs' claim for grossly negligent infliction of emotional distress, and therefore, this claim will be dismissed as well.

The Defendants contend that they are entitled to qualified immunity on the Plaintiffs' remaining state law claims. The standard for qualified official immunity under Kentucky state law is set forth in *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001), which states:

> Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . .; (2) in good faith; and (3) within the scope of the employee's authority.

Qualified official immunity cannot apply in this case because the actions performed by Defendants Gabbard and Harvey were ministerial, not discretionary. According to the Kentucky Supreme Court, "[d]iscretionary acts are, generally speaking, 'those involving the exercise of discretion and

15

judgment, or personal deliberation, decision, and judgment' . . . On the other hand, ministerial acts or functions - for which there are no immunity - are those that require 'only obedience to the orders of others. . . .'" *Haney v. Monseky*, 311 S.W.3d 235 (Ky. 2010)(citations omitted). In this case, the Defendants were acting in accordance with BRJDC policy. Kentucky courts have been clear: "promulgation of rules (creating a policy) is discretionary. However, enforcement of the rules, once in place, is ministerial." *Williams v. Kentucky Department of Education*, 113 S.W.3d 145, 150 (Ky. 2003). As a result, they are not entitled to qualified immunity on these state law claims.

Even if they are not entitled to qualified immunity, the Defendants argue that they cannot be liable for the alleged state law torts when their conduct was performed within their lawful authority and/or in executing BRJDC policy. The Court first considers this defense as it relates to the Plaintiffs' false imprisonment claim. There is no dispute that the Plaintiffs were ordered to be detained by the Perry District Court. The Defendants did not effect the Plaintiffs' arrest nor their confinement. Thus, the Defendants are entitled to summary judgment on the Plaintiffs' claims of false imprisonment.

Next, the Plaintiffs assert a claim for assault based on the strip searches. The Defendants argue that because they were acting in accordance with BRJDC policy, this legal authority is a complete defense. However, the Court has found the policy to be unconstitutional; thus, the Defendants' defense fails and the Plaintiffs may proceed on this claim.

The Plaintiffs also assert a claim for negligence. They allege that the Defendants improperly required the Plaintiffs to remove their clothing for a visual body examination upon admission to BRJDC. This claim, however, is premised on an intentional tort, and does not state a claim for negligence. Accordingly, this claim will be dismissed.

16

Finally, the Plaintiffs assert a claim for invasion of privacy. Again the Defendants contend that because they were acting pursuant to a policy, their actions were not tortious. Here, because of the Court's holding that the Body ID process was unconstitutional, the Plaintiffs' claim for invasion of privacy is a viable claim due to the unreasonable intrusion caused by the strip search. As a result, the Defendants' defense fails and the Plaintiffs may proceed on this claim.

### C. DECLARATORY RELIEF

In addition to their claims for monetary damages, the Plaintiffs seek declaratory relief. Specifically, they seek declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, declaring the conduct and policy at issue in this case a violation of the United States Constitution. The Declaratory Judgment Act provides the mechanism for seeking pre-enforcement review of a statute. 28 U.S.C. § 2201. Declaratory judgments are typically sought before a completed "injury-in-fact" has occurred and are limited to the resolution of an "actual controversy." *National Rife Ass'n of America v. Magaw*, 132 F.3d 272, 279. Here, the injury-in-fact, the strip searches pursuant to the Body ID policy have already occurred and the Body ID policy, as it existed in June 2009, is no longer being implemented. *See* Affidavit of Hasan Davis [DE #67-2]. The policy was suspended in December 2011, and DJJ is no longer conducting fully-unclothed body identification inspection upon intake in detention centers.. Accordingly, the Plaintiffs' claim under 28 U.S.C. § 2201 is moot and will be dismissed.

### D. INJUNCTIVE RELIEF

The Plaintiffs' final claim against the Defendants is for injunctive relief pursuant to 42 U.S.C. § 1983. However, as explained above, DJJ is no longer utilizing an intake procedure which entails fully-unclothed observation of juvenile detainees. Under the new policy, the body

17

identification process is performed while the juvenile is dressed in boxer shorts and a tank top [DE #67-2, Affidavit of Hasan Davis]. Additionally, there is no evidence that DJJ plans to reinstate the Body ID procedure utilized in 2009 at any time in the future. As a result, the Plaintiffs' claim for injunctive relief is now moot, and will be dismissed.

## IV. CONCLUSION

The Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the Defendants' motion for leave to file an additional exhibit to supplemental motion for summary judgment [DE #73] is **GRANTED**, and the Clerk is **DIRECTED** to **FILE** the tendered exhibit; and

(2) the Defendants' motions for summary judgment [DE ##27 and 67] are **GRANTED IN PART** and **DENIED IN PART**, and the Plaintiffs' motions for summary judgment [DE ##34 and 72] are **GRANTED IN PART** and **DENIED IN PART** as follows:

    (a) the Plaintiffs' constitutional claims based on the Fourteenth Amendment and deliberate indifference to the Plaintiffs' constitutional rights are **DISMISSED** as to all Defendants;

    (b) the Plaintiffs' constitutional claims based on the Fourth Amendment against Defendants Haws, Davis, Sewell, Drake, and Voyles are **DISMISSED**, based on qualified immunity;

    (c) the Plaintiffs' constitutional claims based on the Fourth Amendment as to Defendants Gabbard and Harvey **REMAIN PENDING**;

    (d) the Plaintiffs' state law claims for false imprisonment, negligence, and grossly negligent infliction of emotional distress are **DISMISSED**;

    (e) the Plaintiffs' state law claims based on invasion of privacy and assault against Defendants Gabbard and Harvey **REMAIN PENDING**;

    (f) the Plaintiffs' claim for Declaratory Judgment is **DISMISSED**; and

      (g)    the Plaintiffs' claim for Injunctive Relief is **DISMISSED**.

This May 9, 2012.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge